IN THE MATTER OF
**THE HIGH CHIEF TITLE "MAUGA"
OF THE VILLAGE OF PAGO PAGO,
TUTUILA, AMERICAN SAMOA**

No. 1336-1973

High Court of American Samoa

Civil Jurisdiction, Land and Titles Division

March 8, 1974

This is a declaratory judgment proceeding pursuant to Title 11, American Samoa Code, Sec. 6671 (1973) arising from a petition filed by R. S. Tago Sevaaetasi hereinafter referred to as Tago, and members of his branch of the Mauga family on April 13, 1973, requesting the Court to declare "whether or not the Mauga is a split title." Petitioners averred that the Mauga is a split title. A Memorandum of Points and Authorities was also filed on

April 13, 1973, and made part of the petition. Copies of the petition and Memorandum, respectively, were served upon Mauga Iulio, present holder of the Mauga title and respondent herein, on June 7, 1973, as evidenced by the Affidavit of Service filed on the same date.

Counsel for Mauga Iulio and his branch of the Mauga family, Meauta O. Atufili Mageo, hereinafter referred to as Mageo, filed a reply on October 30, 1973, refuting averments that the Mauga is a split title. Simultaneously with the filing of the reply, Mageo entered a Motion to Dismiss petition for lack of jurisdiction.

Hearing on the Motion to Dismiss was held on November 2, 1973, prior to the beginning of the trial on the same day. The Court hereby issues its written opinion and judgment in support of its respective rulings.

First we shall address ourselves to the Motion to Dismiss eloquently argued by Mageo. Counsel Mageo contended that the status of the Mauga title as to whether it is a single or a split title does not constitute a justiciable controversy sufficient to confer jurisdiction upon this Court to enter any form of judgment, except to dismiss. Counsel asserted that splitting a matai title is "totally upon the wish and order of a Samoan family if they wish to live in peace and harmony." For emphasis Mageo told the Court that "attempts made in the past to solve the question now presented for adjudication resulted in bloodshed among members of the Mauga family, and should the Court assumes [sic] jurisdiction and render a judgment, it will again result in bloodshed."

Counsel for petitioners, Tago, argued that petitioners are asserting a right opposed to that of respondent, and that the right and interest of petitioners in the status of the Mauga title must be determined by the Court to avoid future controversies and strife within the family. Tago further argued that the Court recognized the Mauga as a

split title in *Tauvevematalilo v. Fanene Filo*, Civ. 1035 (1970). In that case the Court said, "At that time there were two Mauga, Manuma and Lei. . . ." The Court further stated in the same case that "When a title has been officially registered as a split title, and the two groups of the family have not been able to agree that the title be merged into a single holder, successors to each holder of the split title may be selected and registered in accordance with Sec. 6.0101 et seq., Code of American Samoa." Tago made reference to the Book of Matai Registrations which shows that Moimoi and Taufaasau officially registered the Mauga on the same day in 1906, and the Mauga family has not agreed to merge them as the Court stated in *Tauvevematalilo v. Fanene Filo*, supra.

Title 11, American Samoa Code, Sec. 6671 (1973) grants this Court the authority to make declarations of the rights and duties of one party with respect to another "in cases of actual controversy relating to legal rights and duties of the parties." The authority granted is discretionary. Title 11, American Samoa Code, Sec. 6671 (1973). However, it has been recognized that it is better for a trial court not to exercise its discretionary power to deny declaratory relief on a Motion to Dismiss and that it is preferable for a court to hear the evidence. 22 Am.Jur.2d Declaratory Judgment, Section 93 (1965); *Bell v. Associated Independents, Inc.*, 143 So.2d 904 (Fla. App. 1962).

The basic question in determining whether a complaint presents a justiciable issue which can serve as basis for a declaratory judgment suit is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment, and the test generally applied is whether it is relatively certain that coercive litigation will eventually ensue between the same

parties if a declaratory judgment is refused. *Carmichael v. Mills Music*, D.C.N.Y. 121 F.Supp. 43 (1954). See 28 USCA Sec. 2201 p. 467, (1959). We are convinced from the facts adduced that the question here presented for adjudication is ripe for judicial determination. In *Moimoi v. Taelase*, Civ. 30 (1913) the Court said, "It appears from the evidence that . . . whenever there have been two (Mauga) at the same time, the uncontradicted evidence is that there have been strife, quarrels, and even bloodshed." Evidence further reveals a family history beset by continuous quarrelling, ill-feelings, and dissensions. In the brief span of 16 years, from 1937 to 1953, five cases (Civ. 17, 1937; Civ. 7, 1940; Civ. 1, 1945; Civ. 63, 1948; Civ. 3, 1953) requesting removal of the holder of the Mauga title came before this Court for adjudication. This unfortunate state of affairs in this important family stems directly, in our opinion, from the absence of a judicial determination of the question here presented.

The purpose of a declaratory judgment is to liquidate uncertainties and controversies which might result in future litigations. 22 Am.Jur.2d Declaratory Judgment 841 (1965). Contrary to the argument by Mageo, the facts indicate that this controversy is justiciable in nature involving more than a mere difference of opinion. See *State ex rel. La Follette v. Dammann*, 220 Wis. 17, 264 N.W. 627 (1936). It is our firm conviction that while there may not be any resort to actual violence at present, there exists a state of perpetual disturbance and unrest in this highly influential family.

We therefore do not propose to evade the question presented to us now. We have the power to assume jurisdiction and to exercise our discretion in favor of deciding this momentous question, and to lay to rest finally disputes, ill-feelings, and fights which have plagued the Mauga family for generations. We are not impressed by the

argument, or threat, that the adjudication of this question may result in bloodshed among members of the Mauga family. We are only concerned with our constitutional obligation to the people of American Samoa to "protect the lands, customs, culture and traditional family organizations of persons of Samoan ancestry." Revised Constitution of American Samoa, Art. I, Sec. 3.

The Motion to Dismiss for lack of jurisdiction is therefore denied.

## JUDGMENT

In deciding "whether or not the Mauga is a split title," we are mindful of the fact that we are here confronted with a momentous decision which will have a profound effect upon the integrity of the matai system, especially insofar as the unimpeached importance of its leadership selection process will be affected. Perpetuation of the matai system, unimpaired, is essential to the enhancement of a way of life that has stood Samoa in good stead for many generations.

■ Therefore, we pondered long and carefully the evidence and the arguments presented by the parties. We took judicial notice of the evidence garnered from the records of this Court involving the Mauga family since the establishment of the Government in 1900. Courts may take judicial notice of their own records for all proper purposes. 31 C.J.S. Evidence 1018–1028 (1964). Also we took judicial notice of the general practices under the matai system and prerogative belonging to matai of rank in the Samoan custom. Courts may properly take judicial notice of facts that may be regarded as forming part of the common knowledge of every person of ordinary understanding and intelligence in the community. 31 C.J.S. Evidence 824 (1964). We are judicially cognizant of the development of the matai system from its inception during Polynesian migration from Asia until the present time. See

Buck, "Viking of the Sunrise" (1938). Only after a meticulous sifting of the facts from the fables have we arrived, with unanimity, to the conclusion that the Mauga is not a split title.

⬛ This Court is well versed in the Samoan custom and all its ramifications with respect to the matai system. We know judicially that persons holding a title jointly in the same village are recipients of equal shares of the favors, honors, privileges, and respect traditionally inherent in the title they hold. They share on equal terms the duties and the responsibilities of the title. Thus in 'ava ceremonies they are entitled to only one official 'ava cup. They possess one 'ava cup title or igoa-ipu. One traditional seat or pou, is assigned to them. They are tenants-in-common to a single traditional guesthouse site or tulaga-maota. One taupou title or sa'otama'ita'i is shared by all. All answer to one single honorific salutation or Faalagiga. In food distribution in council meetings, jointholders of a title are entitled to one share or tufaaga, customarily given to the holder or holders of the said title by tradition. Likewise in passing out food trays in official council lunches or taumafa-taga, their entitlement is one tray which is usually given to the oldest of the jointholders. With very few exceptions, jointholders are tenants-in-common also to all communal properties and lands belonging to the title. The exceptions are improvisations for the sake of peace in the family, but not traditional. The situs of the chief of rank such as the Mauga is almost always located on the traditional meeting place or Malae, of the village or county of which the title is paramount.

⬛ The situs of Mauga is Gagamoe in Pago Pago. Gagamoe is the traditional meeting place of Pago Pago village and the entire Ma'uputasi County. Gagamoe also is the traditional guesthouse site of the Mauga. Traditions familiar to this Court speak of only one Gagamoe. Mauga

138

Moimoi and Mauga Taufaasau shared one 'ava cup title, Filiuamaua auamia a Seugaloloa. Tulimalefoi, the traditional taupou title or sa'otama'ita'i of the Mauga was the same whether there was one holder or two holders holding the title at the same time. All evidence with respect to the Mauga title adduced at this hearing and from the records of this court point unequivocally to the fact that the Mauga had always been, from its inception when the progenitor Mauga Mulivai established himself as the high chief of Pago Pago, a single title.

A review of the history of the Mauga title with respect to litigious disputes provides additional support for our conclusion that the Mauga is not a split title. Petitioners know this to be the case. In requesting this Court to decide the issue, petitioners merely embarked on a fishing expedition.

When the Mauga was vacant in 1934 after Moimoi passed away, the branch of the family represented by petitioners and the branch represented by the respondent in the case at bar, filed claims to the same Mauga title. In *Afamasaga v. Iulio*, Civ. 3 (1935), the Mauga was awarded to Afamasaga, member of the petitioners' branch. After the death of Mauga Afamasaga, and the Mauga became vacant again, fourteen persons filed claims to same Mauga title. All branches of the Mauga family were represented by the fourteen claimants. Subsequently, the Court awarded the Mauga to Iulio in *Iulio Taufaasau v. Manuma*, Civ. 123 (1963). Iulio is the present holder of the Mauga and respondent in this case. This is the same Iulio who claimed the Mauga in *Afamasaga v. Iulio*, supra. Thus we learn from the evidence that both petitioners and respondent, by their actions and attitudes, regarded the Mauga as a single title.

Of prime concern to this Court, and it should as strongly appeal to members of the Mauga family, is the fact

139

that splitting the Mauga, and the possession of a piece of Mauga by several persons, will weaken the influence and authority of the Mauga in affairs not only of the village of Pago Pago, but in the County of Ma'uputasi and all American Samoa as well. We shall not be the instrument for the disintegration of the Mauga family organization. Our constitutional obligation is to protect family organizations of the Samoan people. Revised Constitution of American Samoa, Art. I, Sec. 3 (1968).

We are judicially cognizant of the fact that in the long history of the matai system, there had been no split titles. Each matai of high rank and head of a family, or Sa'o, is an entity. Two or more persons holding the same title by consent of the family members hold it as a single matai title. All jointholders of the said title share equally in its remunerations and responsibilities.

■■ In *Tauvevematalilo v. Fanene Filo*, supra, this Court declared that "when a title has been officially registered as a split title, and the two groups of the family have not been able to agree that the title be merged into a single holder, successors to each holder of the split title may be selected and registered in accordance with Sec. 6.0101 et seq., Code of American Samoa." We are reversing our conclusion in *Tauvevematalilo* since upon reconsideration, it was ill-advised and in substantial derogation of Samoan custom. Two or more persons may hold the same matai title. They will be considered jointholders of the *same* title, exercising the same duties and responsibilities, and receiving the same honors and all other attributes traditionally bestowed upon the same title. In no case will the title be considered "split." All jointholders will enjoy the right of survivorship, i.e. the entire title on the decease or removal of any jointholders remains to the survivors, and at length to the last survivor. This has been the general practice under the matai system before *Tauvevematalilo* whose

breach of the integrity of the Samoan custom we repudiate.

Should we assume the power to split a matai title, it must follow that we should assume the responsibility to split communal lands, 'ava cup title, Taupou title, honorific salutation, traditional food tray, traditional shares in a pig or sacred fish or i'a sa, and all other prerogatives traditionally inherent to the matai. Should the splitting continue, Samoa and its culture and custom will eventually disappear. This Court will not allow such to happen to the Samoan people.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the High Chief Title Mauga of Pago Pago Village, Tutuila, American Samoa, is not a split title.

JUDGMENT delivered for the Court by Lutali, presiding Judge.